ROBERT J. TAYLOR, complainant,

*v.*

PHOX BUS COMPANY, a corporation, defendant; GEORGINA Fox, CECILIA Fox and FRANCES A. Fox, individually, and FRANCES A. Fox as co-executrix under the last will and testament of Peter J. Fox, deceased, appellants.

[Submitted February term, 1943.   Decided April 30th, 1943.]

*Mr. Paul J. Duffy,* for Edward M. Salley, Jr., receiver of Phox Bus Co., Inc., a corporation.

*Mr. Maurice C. Brigadier* and *Mr. Irving Charles Picker,* for the appellants.

PER CURIAM.

The appeal is from an order in Chancery making allowances to the receiver and his counsel.   Earlier decisions of this court in the matter are reported at *127 N. J. Eq. 255* and *129 N. J. Eq. 610.*

The Phox Bus Company, a corporation, owns and operates a single bus in Jersey City.   It was declared insolvent in 1939 and has since been operated by a receiver appointed by our Court of Chancery.   The total of the claims allowed by the receiver was $1,834.64, and of that amount $1,120 was owing to Anna Fox, widow of Peter J. Fox, who, prior to his death, was the president of the company, was in control of the business and was one of the two drivers of the bus.   The

appellants herein are the sisters of Peter J. Fox; all of them appeal individually and one of them as co-executrix (the remaining executrix is the widow, Anna Fox) of the last will of Peter J. Fox. It appears from our last decision (*129 N. J. Eq.*, at *p. 614*) that the appraised value of all of the company's assets, which presumably included the bus and the franchise, was $13,000. It is necessary to carry in mind the modest proportions of this litigation—total assets of the corporation $13,000, total allowed claims $1,834.64 ($1,120 of which was in Fox's widow)—in order to give balance to the present dispute.

The appeal is from an allowance to the receiver of $3,000 and an allowance to receiver's counsel of $4,000 made on the occasion of the receiver's second intermediate report for services rendered from the beginning of the receivership to November 30th, 1941. The cash balance at that time, viz., at the allowance of the second intermediate report, was $4,598.08. This appears to be potentially subject to a further charge of $563.35 payable to Byrnes & Van Buren, accountants; at least the report lists that charge and asks approval for the payment thereof. The outstanding debts upon which the company was declared insolvent appear still to be unpaid; a conclusion which we base upon the fact that (*129 N. J. Eq.*, at *p. 616*) the cash balance on the first account was $2,840.26 which, when charged with the allowed claims of $1,834.64, would have left a net balance of $1,005.62. The present account brings forward from the first accounting the cash balance of $2,840.26 and does not disclose the payment of the allowed claims. So, taking into consideration the allowances made to receiver and counsel for services incident to operations, the company seems to be at the time of this accounting about $3,000 worse off than when the insolvency proceedings were started. Since this (the second) account was filed a third intermediate account, not before us, has been filed with the Court of Chancery, and there is no indication that the insolvency will end until the allowances, along with depreciation of the motor bus, creep up to and absorb the entire assets of the company. That there is something inequitable in that development is apparent. Possibly it

would have been better had we permitted the business to be sold when the matter was last before us; but the treasury of the company was being augmented from operating receipts in such a way as to lead us to hope (*129 N. J. Eq.*, at *p. 616*) that the continued operation would enable the concern to work out its own salvation. However, if the accumulated earnings, and much more, are to be drained by allowances, finances are rapidly dwindling. We appreciate that the receiver and his legal adviser have given time and labor that would, perhaps, in some other legal employment, have been rewarded with larger return than the allowances made to them below. But in the law, as in most professions, the profitable and the unprofitable go hand in hand. Every receivership cannot be made a profitable undertaking. The court allowances should be in correct perspective with other aspects of the case. The receiver's duties were made less laborious by the arrangements whereby this bus line, along with others, is subject to the direction of the Bergen Avenue Bus Owners Association for which the receiver paid, during the period covered by the report, $1,333.52. The receiver's counsel, although he has received no allowance in that capacity, did get $600 for his services to the complainant in having the company declared insolvent.

The allowances will presently be reduced to $1,500 for the receiver and $1,000 for the receiver's counsel; and those sums should not be paid in their entirety now if to do so would reduce the cash balances beyond the point of safety in operating the business. This is without prejudice, on the winding up of the receivership, to such a review of the over-all compensation as shall then seem just; but we record our view that the allowances below were excessive for the services against which they were made. We suggest that a new effort be made to effect a sale of the business at an advantageous price.

The record will be remitted to the Court of Chancery and the decree there be modified in accordance with the directions of this opinion.

*For modification*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PORTER, WELLS, RAFFERTY, THOMPSON, JJ. 10.